```
                              FILED
                      CLERK, U.S. DISTRICT COURT

                          FEB 21 2025

                    CENTRAL DISTRICT OF CALIFORNIA
                    BY: _____rsm_____ DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2025 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>SHIRZAD MEHRRAFIEE,<br>　aka "Shirzad Rafiee," and<br>MAHDI RAJABI,<br><br>　　　　Defendants. | CR **2:25-CR-00126-CV**<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 371: Conspiracy to Conduct an Unlicensed Money Transmitting Business; 18 U.S.C. § 1349: Conspiracy to Commit Wire Fraud; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1344(1): Bank Fraud; and 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982 and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

　　The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

[ALL DEFENDANTS]

A.　INTRODUCTORY ALLEGATIONS

　　At times relevant to this Indictment:

　　1.　Defendants SHIRZAD MEHRRAFIEE, also known as "Shirzad Rafiee," and MAHDI RAJABI were present and resided in the Central District of California.

2.   Neither MEHRRAFIEE nor RAJABI, nor any entity through which they were operating, were registered as a money services business under federal laws and regulations or as a money transmitter under the laws and regulations of the State of California.

B.   OBJECT OF THE CONSPIRACY

Beginning on a date unknown, but no later than January 2020, and continuing through at least February 6, 2025, in Los Angeles County, within the Central District of California, and elsewhere, defendants MEHRRAFIEE and RAJABI, and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly conduct, control, manage, supervise, direct, and own an unlicensed money transmitting business affecting interstate and foreign commerce, which (1) was operated without an appropriate money transmitting license in California, where such operation is punishable as a felony under state law, and (2) failed to comply with the money transmitting business registration requirements under Title 31, United States Code, Section 5330, and the regulations thereunder, all in violation of Title 18, United States Code, Sections 1960(a), (b)(1)(A), and (b)(1)(B).

C.   MANNER AND MEANS OF THE CONSPIRACY

3.   The object of the conspiracy was to be accomplished, in substance, as follows:

   a.   Defendants MEHRRAFIEE and RAJABI, together and working with others, would receive and transmit funds in the form of wire transmissions, checks, and large amounts of U.S. currency on behalf of other people.  Defendant RAJABI would also operate a social media platform where he advertised an ability to transfer money to and from Iran on behalf of customers.

b.  Defendants MEHRRAFIEE and RAJABI would communicate about exchanging large amounts of U.S. currency, including communicating through encrypted messaging applications.

c.  Defendant RAJABI would deliver large quantities of U.S. currency to defendant MEHRRAFIEE so that defendant MEHRRAFIEE could arrange for the funds to be deposited into bank accounts in the United States.

d.  After receiving large amounts of cash from co-conspirators, including defendant RAJABI, defendant MEHRRAFIEE would deposit the cash into bank accounts in the United States that defendant MEHRRAFIEE controlled.

e.  Defendant MEHRRAFIEE would receive wire transfers and deposit checks and cash into, among other places, a bank account ending in x2866 under the entity name Advaa at Bank-1 (the "Advaa Bank Account"); a bank account ending in x2908 under the entity name American Golden Brokers (the "AGB Bank Account"); and a bank account ending in x2916 under the entity name I Concert Entertainment Inc. (the "I Concert Bank Account") (together, the "Money Transmitting Bank Accounts").

f.  After taking a percentage of the transaction value as profit, defendant MEHRRAFIE would disburse money to others, including by issuing checks from the Money Transmitting Bank Accounts, and other accounts controlled by defendant MEHRRAFIEE, and through substantial cash withdrawals from the Money Transmitting Bank Accounts.

4.  Between in or about January 2020 and in or about November 2024, defendant MEHRRAFIEE caused withdrawals of cash and wrote checks worth a total of over $46 million from the Money Transmitting

3

Bank Accounts on behalf of co-conspirators and/or customers of defendant MEHRRAFIEE's illegal money transmitting business.

### D. OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendants MEHRRAFIEE and RAJABI, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act No. 1:   On March 7, 2024, after defendant RAJABI asked whether defendant MEHRRAFIEE would send a wire transfer to another individual, defendant MEHRRAFIEE responded that wires were a headache because banks report wires to the back office and the FBI, among others, so defendant MEHRRAFIEE felt it was better to deposit directly into the account, *i.e.*, transfer money by check.

Overt Act No. 2:   On March 9, 2024, defendant RAJABI informed defendant MEHRRAFIEE that he knew a person in Mashhad, Iran, who would give defendant RAJABI money in Tehran, Iran for the purpose of completing a parallel escrow payment in the United States. Defendant RAJABI asked if defendant MEHRRAFIEE could assist with the transaction.

Overt Act No. 3:   On March 9, 2024, in response to the communications referenced in Overt Act No. 2, defendant MEHRRAFIEE told defendant RAJABI that he could do the transaction but that the person in Tehran would need to have U.S. dollars.

Overt Act No. 4:   On March 9, 2024, defendant RAJABI sent defendant MEHRRAFIEE English-language escrow instructions from a particular escrow company ("Escrow Company-1") and indicated the payment would be $36,100.

Overt Act No. 5:   On March 9, 2024, defendant RAJABI confirmed to defendant MEHRRAFIEE that their Iranian customer agreed to deliver the money to a co-conspirator in Tehran, Iran, the following day.

Overt Act No. 6:   On March 10, 2024, in response to defendant RAJABI asking for the phone number of defendant MEHRRAFIEE's contact in Iran and indicating that the money delivery would happen on March 11, 2024, defendant MEHRRAFIEE sent defendant RAJABI certain information for his Iranian contact.

Overt Act No. 7:   On March 12, 2024, defendant MEHRRAFIEE caused a wire transfer of $36,100 from the I Concert Bank Account to Escrow Company-1.

Overt Act No. 8:   On September 24, 2024, defendants MEHRRAFIEE and RAJABI communicated about a money transmitting transaction in the amount of $40,441, which included defendant RAJABI asking for a photograph of the money transfer in order to show it to another co-conspirator.

Overt Act No. 9:   On September 24, 2024, defendant MEHRRAFIEE sent defendant RAJABI a photograph depicting banking information showing checks paid in the amount of $40,441.

Overt Act No. 10:   On September 24, 2024, defendant MEHRRAFIEE and defendant RAJABI met at a gas station in Encino, California, where defendant RAJABI handed defendant MEHRRAFIEE a bag containing United States currency.

Overt Act No. 11:   On September 24, 2024, after receiving U.S. currency from defendant RAJABI, defendant MEHRRAFIEE traveled to a Bank-1 branch in Encino, California, where he entered the bank branch carrying the bag he received from defendant RAJABI.

1      Overt Act No. 12:   On September 24, 2024, defendant MEHRRAFIEE
2 deposited approximately $380,100 in cash into the Advaa Bank Account,
3 and left the Bank-1 branch not carrying the bag he received from
4 defendant RAJABI and instead carrying only a piece of paper.
5      Overt Act No. 13:   On February 6, 2025, defendant RAJABI
6 traveled to a parking lot in Woodland Hills, California, to pick up
7 approximately $150,000 in currency from another person.

COUNT TWO

[18 U.S.C. § 1349]

[DEFENDANT MEHRRAFIEE]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1.   Defendant SHIRZAD MEHRRAFIEE, also known as "Shirzad Rafiee," resided in and conducted business from the Central District of California.

2.   The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 that was designed to provide emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic.

3.   The Economic Injury Disaster Loan Program ("EIDL") was a United States Small Business Administration ("SBA") program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

4.   The CARES Act authorized the SBA to provide EIDL loans of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

5.   To obtain an EIDL loan, a qualifying business was required to submit an application to the SBA and provide information about the business's operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster.  In the case of EIDL loans for COVID-19 relief, the 12-month period was the 12-month period from January 31, 2019, to January 31, 2020.  The applicant was also required to certify that all of the information in

the application was true and correct to the best of the applicant's knowledge.

6. EIDL loan applications were submitted directly to the SBA and processed by the agency with support from a government contractor. The amount of the loan, if the application was approved, was determined in part based on the information provided by the applicant about employment, revenue, and cost of goods sold. Any funds issued under an EIDL loan were issued directly by the SBA.

7. EIDL loan funds could be used for payroll expenses, sick leave, production costs, and business obligations of the applicant entity, such as debts, rent, and mortgage payments. Borrowers, as part of the EIDL loan application, certified that they would use loan proceeds "solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter."

B. THE OBJECT OF THE CONSPIRACY

Beginning on or about June 27, 2020, and continuing until on or about December 31, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant MEHRRAFIEE knowingly conspired with others known and unknown to the Grand Jury to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

C. THE MANNER AND MEANS OF THE CONSPIRACY

8. The object of the conspiracy was carried out, and was to be carried out, in substance, as follows:

a. Defendant MEHRRAFIEE and co-conspirators would submit and cause to be submitted false and fraudulent applications to the SBA for EIDL loans on behalf of purported sole proprietorship

businesses operated in the name of their respective owners (the "Alias EIDL Applications"), including the following:

| EIDL Loan Applicant | Date Loan Application Submitted |
|---|---|
| Individual R.B. | 6/27/2020 |
| Individual A.S. | 6/29/2020 |
| Individual A.T. | 6/29/2020 |
| Individual S.D. | 6/30/2020 |
| Individual I.K. | 6/30/2020 |
| Individual T.S. | 6/30/2020 |
| Individual P.P. | 7/1/2020 |
| Individual A.C. | 7/6/2020 |
| Individual I.A. | 7/7/2020 |
| Individual A.B. | 7/8/2020 |
| Individual S.P. | 7/14/2020 |
| Individual O.K. | 7/15/2020 |
| Individual K.A. | 7/15/2020 |
| Individual A.D. | 7/15/2020 |
| Individual S.S. | 7/15/2020 |
| Individual D.B. | 7/17/2020 |
| Individual E.J. | 7/20/2020 |

b.  In the Alias EIDL Applications, one or more conspirators would cause the submission of fraudulent EIDL loan applications containing materially false statements, representations, promises, and omissions, including: misrepresenting the location of the purported business, misrepresenting the purpose of the funds, misrepresenting the true applicant for the EIDL, and misrepresenting the operation of the business entity listed in the EIDL application.

9

      c.    In connection with the Alias EIDL Applications, conspirators would provide the SBA with bank account information into which loan funds could be disbursed.

      d.    Defendant MEHRRAFIEE would exchange messages with co-conspirators regarding the fraudulent loan applications and disbursements.

      e.    After the SBA disbursed loan funds into bank accounts set up in the name of each purported applicant, conspirators, including defendant MEHRRAFIEE, would empty those bank accounts of funds, including by defendant MEHRRAFIEE writing checks made out to "cash" and/or other business entities he controlled.

D.    OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendant MEHRRAFIEE, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

<u>Overt Act No. 1</u>:    On July 6, 2020, a co-conspirator caused, through the submission of a fraudulent EIDL loan application, the SBA to disburse approximately $8,000 in EIDL advance funds into a bank account in the name of Individual P.P. (the "Individual P.P. Bank Account"). Prior to the wire transfer, the Individual P.P. Bank Account contained $0.

<u>Overt Act No. 2</u>:    On July 13, 2020, a co-conspirator caused, through the submission of a fraudulent EIDL loan application, the SBA to disburse approximately $149,900 in EIDL funds into the Individual P.P. Bank Account.

Overt Act No. 3: On July 7, 2020, a co-conspirator caused, through the submission of a fraudulent EIDL loan application, the SBA to disburse approximately $149,900 in EIDL funds into a bank account in the name of Individual I.K (the "Individual I.K. Bank Account"). Prior to the wire transfer, the Individual I.K. Bank Account contained $0.

Overt Act No. 4: On July 7, 2020, a co-conspirator caused, through the submission of a fraudulent EIDL loan application, the SBA to disburse approximately $149,900 in EIDL funds into a bank account in the name of Individual I.K (the "Individual I.K. Bank Account"). Prior to the wire transfer, the Individual I.K. Bank Account contained $0.

Overt Act No. 5: On July 21, 2020, a co-conspirator caused, through the submission of a fraudulent EIDL loan application, the SBA to disburse approximately $149,900 in EIDL funds into a bank account in the name of Individual O.K (the "Individual O.K. Bank Account"). Prior to the wire transfer, the Individual O.K. Bank Account contained $0.

Overt Act No. 6: On August 19, 2020, a co-conspirator wrote a check for $24,000 drawn from the Individual I.K. Bank Account to cash, which, after several checks were already issued from the Individual I.K. Bank Account, left only $1,047 in the account.

Overt Act No. 7: On August 24, 2020, a co-conspirator ("Co-Conspirator-1") messaged defendant MEHRRAFIEE to ask if Individual I.K. was done.

Overt Act No. 8: On August 24, 2020, in response to the text messages referenced in Overt Act No. 7, defendant MEHRRAFIEE responded to Co-Conspirator-1, "yes sir."

11

      Overt Act No. 9:   On September 1, 2020, a co-conspirator wrote a check for $28,000 drawn from the Individual P.P. Bank Account to "American Golden," which, after several checks were already issued from the Individual P.P. Bank Account, left only $9,157 in the account.

      Overt Act No. 10:   On September 10, 2020, Co-Conspirator-1 messaged defendant MEHRRAFIEE asking "[d]id you do [Individual P.P.][?]" and stating "[l]ast transaction is showing Sept 02 for $28k."

      Overt Act No. 11:   On September 14, 2020, Co-Conspirator-1 messaged defendant MEHRRAFIEE with a list of first names, last initials, and dollar amounts, including "[Individual O.K.] 53k," and "[Individual S.S.] $88k," and adding "These r getting close. Can u finish them by next week?"

      Overt Act No. 12:   On September 14, 2020, in response to the messages referenced in Overt Act No. 11, defendant MEHRRAFIEE responded to Co-Conspirator-1, "Oh yes for sure."

      Overt Act No. 13:   On September 14, 2020, Co-Conspirator-1 messaged defendant MEHRRAFIEE to say "Bro did u do the $10k for [Individual O.K.] cause it's still not showing?"

      Overt Act No. 14:   On September 14, 2020, defendant MEHRRAFIEE responded to the text messages referenced in Overt Act No. 13 by saying "Yes bro" and "It will show tomorrow."

      Overt Act No. 15:   On September 15, 2020, a co-conspirator wrote a check for $10,000 drawn from the Individual O.K. Bank Account to American Golden, which, after several checks were already issued from the Individual O.K. Bank Account, left only $895 in the account.

COUNT THREE

[18 U.S.C. §§ 1343, 2(a)]

[DEFENDANT MEHRRAFIEE]

The Grand Jury re-alleges here Paragraph 1 of Count One and Paragraphs 2-7 of Count Two of this Indictment.

A.   THE SCHEME TO DEFRAUD

1.   Beginning on or about March 30, 2020, and continuing until at least on or about February 15, 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant SHIRZAD MEHRRAFIEE, also known as "Shirzad Rafiee," together with others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud victims as to material matters, and to obtain money and property from the victims by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

2.   The fraudulent scheme operated and was carried out, in substance, as follows:

3.   Defendant MEHRRAFIEE submitted to the SBA an EIDL application on behalf of I Concert Entertainment LLC (the "I Concert EIDL Application"), a company that defendant MEHRRAFIEE controlled.

4.   In the I Concert EIDL Application, defendant MEHRRAFIEE made and caused to be made materially false statements, representations to, and promises, and concealed material facts from, the SBA in connection with obtaining EIDL loan funds for the business, including defendant MEHRRAFIEE answering "no" to a question asking whether defendant MEHRRAFIEE had ever been convicted of, or pleaded guilty to, any criminal offense except a minor vehicle

violation.  At the time defendant MEHRRAFIEE completed and submitted the I Concert EIDL Application, he knew that he sustained a felony conviction in 2007 for conspiracy to commit bank fraud, in violation of Title 18, United States Code, Section 1349, for which he was sentenced to 24 months' imprisonment and five years of supervised release.

5.   Based on defendant MEHRRAFIEE's submission of the I Concert EIDL Application, the SBA disbursed a loan in the amount of $150,000

6.   Defendant MEHRRAFIEE later submitted a loan modification request to increase the amount of the loan granted by the SBA, which resulted in the SBA disbursing an additional $350,000 in loan funds.

B.   THE USE OF THE WIRES

7.   On or about March 30, 2024, in Los Angeles County, within the Central District of California, and elsewhere, defendant MEHRRAFIEE, for the purpose of executing the above-described scheme to defraud, transmitted and caused the transmission by means of a wire communication in interstate commerce an electronic communication, namely, the submission of the I Concert EIDL Application from the Central District of California to a server outside the State of California.

                          COUNT FOUR

                      [18 U.S.C. § 1344(1)]

                      [DEFENDANT MEHRRAFIEE]

   The Grand Jury re-alleges here Paragraph 1 of Count One of this Indictment.

   A.   INTRODUCTORY ALLEGATIONS

      1.   Bank-2 operated in the Central District of California, and elsewhere, and is a mortgage lending business.

   B.   THE SCHEME TO DEFRAUD

      2.   In or about June 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant SHIRZAD MEHRRAFIEE, also known as "Shirzad Rafiee," together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud Bank-2, as to material matters.

      3.   The fraudulent scheme operated, in substance, in the following manner:

         a.   On or about June 28, 2021, defendant MEHRRAFIEE applied for a home mortgage loan with Bank-2.

         b.   As part of the loan application process, defendant MEHRRAFIEE submitted bank statements for one of his purported businesses, I Concert Entertainment LLC.  The bank statements purported to be from an account at Bank-1 in the name of I Concert Entertainment LLC with an account ending in 6164 (the "I Concert Entertainment Account").

         c.   In connection with the mortgage application, defendant MEHRRAFIEE submitted fraudulent bank statements related to the I Concert Entertainment Account for the period from January 2021 to

April 2021 that had been manipulated and altered to significantly overstate defendant MEHRRAFIEE's income and assets in the account.

C. EXECUTION OF THE SCHEME

4. On or about June 28, 2021, in Los Angeles County, within the Central District of California, defendant MEHRRAFIEE, together with others known and unknown to the Grand Jury, executed the fraudulent scheme described above by submitting to Bank-2 false and fraudulent bank statements related to the I Concert Entertainment Account in support of his mortgage loan application.

## FORFEITURE ALLEGATION ONE
[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts One through Three of this Indictment.

2. Any defendant so convicted shall forfeit to the United States of America the following:

   (a) all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

   (b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982]

1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), in the event of the defendant's conviction of the offense set forth in Count Four of this Indictment.

2.   The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party;
///

(c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/
Foreperson

JOSEPH T. MCNALLY
Acting United States Attorney

*David Ryan* (signature)

DAVID T. RYAN
Assistant United States Attorney
Chief, National Security Division

IAN V. YANNIELLO
Assistant United States Attorney
Chief, Terrorism and Export Crimes Section

KEDAR S. BHATIA
Assistant United States Attorney
Terrorism and Export Crimes Section